UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Jeremy Guzman, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> - against - <br><br> Walmart Inc., <br><br> Defendant | 1:22-cv-03465 <br><br> Class Action Complaint <br><br> Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge:

1. Walmart Inc. ("Defendant") manufactures, markets, labels and sells mayonnaise dressing promoted as made "With Olive Oil" under the Great Value brand ("Product").



1

2. The labeling gives consumers the impression it has a greater absolute and relative amount of olive oil compared to traditional vegetable oil ingredients than it does.

### I. MAYONNAISE

3. Mayonnaise or "mayo" is a thick, creamy dressing commonly used on sandwiches and composed salads, and is the base for other sauces, such as tartar sauce and Russian dressing.

4. Mayonnaise and its reduced-fat variations are defined by a standard of identity as an emulsion of vegetable oils, eggs, and acids.

5. Vegetable oil traditionally refers to cooking oils such as corn oil, canola oil, palm oil, safflower oil, sesame oil, soybean oil and sunflower oil.

6. Consumer demand for mayonnaise has declined over the past twenty years for various reasons.

7. First, mayonnaise is considered an ultraprocessed food ("UPF"), frowned upon by nutrition authorities.

8. Second, while mayonnaise used to be made with limited, natural ingredients, such as eggs, fresh salad oils, vinegars and seasonings, today it is mostly vegetable oils and water, a small amount of eggs, with numerous additives, synthetic preservatives, and added salt.

9. Third, there is a perception that mayonnaise is used to conceal flaws in the foods to which it is applied.

10. Fourth, a larger percentage of society follows dietary preferences which exclude eggs, for reasons related to health, animal welfare, and environmental impact.

11. Fifth, the traditional vegetable oils used in mayonnaise are recognized as containing harmful fats with negative health effects, such as increasing cholesterol.

12. A recent study indicated that the main oil ingredient in mayonnaise, "soybean oil [,]

not only leads to obesity and diabetes, but could also affect neurological conditions like autism, Alzheimer's disease, anxiety, and depression."[1]

13. Sixth, the variety of condiments has increased significantly since the invention of mayonnaise.

14. Whereas consumers once chose from mayonnaise, ketchup, and mustard, today they choose from dozens including salsa, hummus, kimchi, wasabi, and guacamole.

15. These condiments are typically served fresh, contain healthy ingredients, and appeal to consumers seeking to avoid heavily processed foods.

**II.  CONSUMER DEMAND FOR OLIVE OIL**

16. Most vegetable oils are highly processed using chemicals to make them palatable, which reduces their nutritional value.

17. In contrast, olive oil is simply the juice of crushed olives without additives.

18. Whereas vegetable oils have no flavor or aroma, olive oil is known for its peppery and grassy taste.

19. Over the past several decades, olive oil's popularity has increased such that its sales exceed all other vegetable oils combined.

20. A key reason for this popularity is olive oil's association with the Mediterranean Diet, confirmed by scientific studies to positively impact all-cause mortality, among other benefits.

21. Olive oil has high levels of heart-healthy fats, such as polyunsaturated and monounsaturated fat, which help control cholesterol.

22. The oleic acid and bioactive plant compounds known as phenols in olive oil is linked

---

[1] Science Daily, "America's most widely consumed oil causes genetic changes in the brain – Soybean oil linked to metabolic and neurological changes in mice," University of California, Riverside, Jan. 17, 2020.

to reductions in the risks of various cancers.

23. Olive oil contains antioxidants which promote immunity and fight free radical damage to help slow the aging process.

24. Olive oil promotes brain function, bone strength, and balanced blood sugar.

## III. REPRESENTATION PRODUCT IS MADE "WITH OLIVE OIL" IS MISLEADING

25. Defendant markets the Product to the increasing numbers of Americans seeking to consume traditional foods but with ingredients known for providing health benefits, like olive oil.

26. By labeling and promoting the Product as made "With Olive Oil," with green packaging evocative of the color of olives, consumers expect a significant, non-de minimis amount of olive oil, in relative and absolute amounts to all oils used.

27. However, the ingredient list reveals a smaller than expected amount of olive oil, in absolute and relative terms, and that the most predominant oil is "Soybean Oil."

**INGREDIENTS:** WATER, SOYBEAN OIL, OLIVE OIL, MODIFIED FOOD STARCH*, VINEGAR, WHOLE EGGS, EGG YOLKS, SUGAR, SALT, CONTAINS LESS THAN 2% OF LEMON JUICE CONCENTRATE, SORBIC ACID (PRESERVATIVE)*, NATURAL FLAVOR, CALCIUM DISODIUM EDTA TO PROTECT FLAVOR, PAPRIKA EXTRACT. *INGREDIENTS NOT IN REGULAR MAYONNAISE. **CONTAINS EGGS.**

28. The relative and absolute amount of olive oil is insufficient to confer any of the health benefits associated with olive oil nor reduce the harmful effects of the soybean oil used.

4890-1931-8311, v. 2

**IV. CONCLUSION**

29. Defendant makes other representations and omissions with respect to the Product which are false and misleading.

30. Reasonable consumers must and do rely on a company to honestly and lawfully market and describe the components, attributes, and features of a product, relative to itself and other comparable products or alternatives.

31. The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

32. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

33. Had Plaintiff known the truth, he would not have bought the Product or would have paid less for it.

34. As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than no less than $2.80 for 30 oz, excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

Jurisdiction and Venue

35. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

36. The aggregate amount in controversy exceeds $5 million, including any statutory and punitive damages, exclusive of interest and costs.

37. Plaintiff Jeremy Guzman is a citizen of Illinois.

38. Defendant Walmart Inc. is a Delaware corporation with a principal place of business in Bentonville, Benton County, Arkansas.

4890-1931-8311, v. 2

39. The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

40. The members of the class Plaintiff seeks to represent are more than 100, because the Product has been sold with the representations described here for several years, in thousands of locations across the States covered by Plaintiff's proposed classes.

41. The Product is available to consumers from Defendant's retail stores and its website.

42. Venue is in the Eastern Division in this District because a substantial part of the events or omissions giving rise to these claims occurred in Lake County, including Plaintiff's purchase, consumption, transactions and/or use of the Product and awareness and/or experiences of and with the issues described here.

Parties

43. Plaintiff Jeremy Guzman is a citizen of North Chicago, Lake County, Illinois.

44. Defendant Walmart Inc. is a Delaware corporation with a principal place of business in Bentonville, Arkansas, Benton County.

45.

46. Great Value

47.

48. Walmart is an American multinational retail corporation that operates a chain of over 5,000 supercenters nationwide, selling furniture to groceries.

49. Walmart employs almost 1.5 million workers and provides a path to the middle-class.

50. Walmart's business model is based on selling consumers what they need and want at affordable prices, even when this means it makes less profit.

51. Walmart is active in the communities where it operates, responding to natural

4890-1931-8311, v. 2

disasters and providing essential services, in ways similar to governments or the Red Cross.

52. These facts add up to the Walmart brand having a significant amount of goodwill, trust and equity when it comes to consumer purchasing.

53. While Walmart sells leading national brands, it sells a large number of products under its private label Great Value brand.

54. Private label products are made by third-party manufacturers and sold under the name of the retailer, or its sub-brands.

55. Previously referred to as "generic" or "store brand," private label products have increased in quality, and often are superior to their national brand counterparts.

56. Great Value brand products have an industry-wide reputation for quality and value.

57. In releasing products under the Great Value brand, Defendant's foremost criteria was to have high-quality products that were equal to or better than the national brands.

58. Defendant is able to get national brands to produce private label items under the Great Value brand due its loyal customer base and tough negotiating.

59. That Great Value products continually meet this high bar is proven by focus groups, which rated them above the name brand equivalent.

60. Private label products generate higher profits for retailers because national brands spend significantly more on marketing, contributing to their higher prices.

61. A survey by The Nielsen Co. "found nearly three out of four American consumers believe store brands are good alternatives to national brands, and more than 60 percent consider them to be just as good."

62. Private label products under the Great Value brand benefit by their association with consumers' appreciation for the Walmart brand as a whole.

63. The development of private label items is a growth area for Walmart, as they select only top suppliers to develop and produce Great Value products.

64. The Product is sold in containers and in squeeze bottles.

65. Plaintiff purchased the Product at locations including Walmart, 3900 Fountain Square Pl, Waukegan, IL 60085, between December 14, 2021, and April 14, 2022, among other times.

66. Plaintiff believed, expected, and desired that the Product had a greater absolute and/or relative amount of olive oil, in part to provide the health benefits associated with this ingredient, compared to traditionally used oils such as soybean oil, which lacked these benefits because that is what the representations and omissions said and implied, on the front label and/or the absence of any references or statements elsewhere on the Product.

67. Plaintiff relied on the words, terms coloring, descriptions, layout, placement, packaging and/or images on the Product, on the labeling, statements, omissions, claims and, statements, made by Defendant or at its directions, in digital, print and/or social media, which accompanied the Product and separately, through in-store, digital, audio, and print marketing.

68. Plaintiff bought the Product at or exceeding the above-referenced price.

69. Plaintiff would not have purchased the Product if he knew the representations and omissions were false and misleading or would have paid less for it.

70. Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, features, and/or components.

71. The Product was worth less than what Plaintiff paid and he would not have paid as much absent Defendant's false and misleading statements and omissions.

72. Plaintiff intends to, seeks to, and will purchase the Product again when he can do so

with the assurance the Product's representations are consistent with its abilities, attributes, and/or composition.

73. Plaintiff is unable to rely on the labeling and representations not only of this Product, but other similar mayonnaise and its reduced fat variations with added healthy ingredients, because he is unsure whether those representations are truthful.

## Class Allegations

74. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **Illinois Class:** All persons in the State of Illinois who purchased the Product during the statutes of limitations for each cause of action alleged; and
>
> **Consumer Fraud Multi-State Class**: All persons in the States of Alabama, North Carolina, Mississippi, Alaska, West Virginia, Utah, Kentucky, Montana, Idaho and Oklahoma who purchased the Product during the statutes of limitations for each cause of action alleged.

75. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

76. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

77. Plaintiff is an adequate representative because his interests do not conflict with other members.

78. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

79. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

9

80. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

81. Plaintiff seeks class-wide injunctive relief because the practices continue.

## Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, et seq.

### (Consumer Protection Statute)

82. Plaintiff incorporates by reference all preceding paragraphs.

83. Plaintiff believed the Product had a greater absolute and/or relative amount of olive oil, in part to provide the health benefits associated with this ingredient, compared to traditionally used oils such as soybean oil, which lacked these benefits.

84. Defendant's false, misleading and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

85. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

86. Plaintiff relied on the representations and omissions to believe the Product had a greater absolute and/or relative amount of olive oil, in part to provide the health benefits associated with this ingredient, compared to traditionally used oils such as soybean oil, which lacked these benefits.

87. Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Violation of State Consumer Fraud Acts

### (On Behalf of the Consumer Fraud Multi-State Class)

88. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are

similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

89. The members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

90. Defendant intended that members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct.

91. As a result of Defendant's use of artifice, and unfair or deceptive acts or business practices, the members of the Consumer Fraud Multi-State Class sustained damages by paying more for the Product than they would have paid, had they known the truth.

92. Defendant's conduct showed motive and a reckless disregard of the truth such that an award of punitive damages is appropriate.

<u>Breaches of Express Warranty,</u>
<u>Implied Warranty of Merchantability/Fitness for a Particular Purpose</u>
<u>and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*</u>

93. The Product was manufactured, identified, marketed and sold by Defendant and expressly and impliedly warranted to Plaintiff that it had a greater absolute and/or relative amount of olive oil, in part to provide the health benefits associated with this ingredient, compared to traditionally used oils such as soybean oil, which lacked these benefits.

94. Defendant directly marketed the Product to Plaintiff through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions distributed to resellers, and targeted digital advertising.

95. Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet those needs and desires.

96. Defendant's representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant that it had a greater absolute and/or relative amount of olive oil, in part to provide the health benefits associated with this ingredient, compared to traditionally used oils such as soybean oil, which lacked these benefits.

97. Defendant's representations affirmed and promised that the Product had a greater absolute and/or relative amount of olive oil, in part to provide the health benefits associated with this ingredient, compared to traditionally used oils such as soybean oil, which lacked these benefits.

98. Defendant described the Product so Plaintiff believed it had a greater absolute and/or relative amount of olive oil, in part to provide the health benefits associated with this ingredient, compared to traditionally used oils such as soybean oil, which lacked these benefits, which became part of the basis of the bargain that it would conform to its affirmations and promises.

99. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

100. This duty is based on Defendant's outsized role in the market for this type of Product, a trusted company, known for its transparent labeling, and its commitment to putting customers first.

101. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

102. Plaintiff provided or will provide notice to Defendant, its agents, representatives, retailers, and their employees.

103. Plaintiff hereby provides notice to Defendant that it breached the express and implied warranties associated with the Product.

104. Defendant received notice and should have been aware of these issues due to

complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

105. The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

106. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container or label, because it was marketed as if it had a greater absolute and/or relative amount of olive oil, in part to provide the health benefits associated with this ingredient, compared to traditionally used oils such as soybean oil, which lacked these benefits.

107. The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because he expected it had a greater absolute and/or relative amount of olive oil, in part to provide the health benefits associated with this ingredient, compared to traditionally used oils such as soybean oil, which lacked these benefits, and he relied on Defendant's skill and judgment to select or furnish such a suitable product.

108. Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Negligent Misrepresentation</u>

109. Defendant had a duty to truthfully represent the Product, which it breached.

110. This duty was non-delegable, based on Defendant's position, holding itself out as having special knowledge and experience in this area, a trusted company, known for its transparent labeling, and its commitment to putting customers first.

111. Defendant's representations and omissions regarding the Product went beyond the specific representations on the packaging, as they incorporated the extra-labeling promises and commitments to quality, transparency and putting customers first, that it has been known for.

112. These promises were outside of the standard representations that other companies may make in a standard arms-length, retail context.

113. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant.

114. Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

115. Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Fraud

116. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it had a greater absolute and/or relative amount of olive oil, in part to provide the health benefits associated with this ingredient, compared to traditionally used oils such as soybean oil, which lacked these benefits.

117. Moreover, the records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of the falsity and deception, through statements and omissions.

118. Defendant knew of the issues described here yet did not address them.

119. Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

## Unjust Enrichment

120. Defendant obtained benefits and monies because the Product was not as represented

and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated: July 5, 2022

Respectfully submitted,

/s/Spencer Sheehan
Sheehan & Associates, P.C.
Spencer Sheehan
60 Cuttermill Rd Ste 412
Great Neck NY 11021
Tel: (516) 268-7080
spencer@spencersheehan.com

4890-1931-8311, v. 2