**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

**EASTERN DIVISION**

| | | |
|---|---|---|
| Jeremy Guzman, individually and on behalf of all others similarly situated, | | 1:22-cv-03465 |
| | Plaintiff, | |
| | - against - | Hon. Steven C. Seeger |
| Walmart Inc., | | |
| | Defendant | |

Response to Court's Order to Show Cause

# TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................................. ii

TABLE OF AUTHORITIES ......................................................................................... iii

INTRODUCTION ........................................................................................................... 1

FACTUAL BACKGROUND .......................................................................................... 1

LEGAL STANDARDS ................................................................................................... 2

ARGUMENT .................................................................................................................. 3

I.      NO NOTICE PROVIDED AS TO THE SANCTIONABLE CONDUCT ...................... 3

      A.      Reliance on Sources Dehors the Record Improper ................................. 3

      B.      None of Cited Cases Were Deemed Frivolous ....................................... 4

II.     RULE 11 DOES NOT AUTHORIZE *SUA SPONTE* IMPOSITION OF
ATTORNEY'S FEES ................................................................................................ 5

III.    PLAINTIFF'S CLAIMS WERE SUPPORTED BY EXISTING LAW
UNDER *BELL* .......................................................................................................... 6

      A.      Rule 11 Requires Review of Legal Precedent ....................................... 6

      B.      Applicable Standard for "Reasonable Consumer" Analysis................... 8

      C.      Reference to Ingredients Sufficiently Plausible to Suggest Amounts of
Them ...................................................................................................... 9

IV.    ALLEGATIONS "WARRANTED BY LAW" BASED ON LABELING
REQUIREMENTS ................................................................................................... 11

      A.      Olive Oil is the Product's Characterizing Ingredient............................. 11

      B.      Label was Required to Declare Relative Amount of Olive Oil ............ 12

V.      ANY DIFFERENCE BETWEEN "WITH" AND "MADE WITH"
SUPPORTS EXTENSION OF EXISTING LAW ........................................................ 14

CONCLUSION ............................................................................................................... 14

# TABLE OF AUTHORITIES

## Cases

*Alyeska Pipeline Service Co. v. Wilderness Society*,
421 U.S. 240 (1975) .................................................................................................. 6

*B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*,
168 F.3d 967 (7th Cir. 1999) ................................................................................... 13

*Bardsley v. Nonni's Foods LLC*,
No. 20-cv-2979, 2022 WL 814034 (S.D.N.Y. Mar. 16, 2022) ............................... 10

*Beardsall v. CVS Pharmacy, Inc.*,
953 F.3d 969 (7th Cir. 2020) ..................................................................................... 8

*Bell v. Publix Super Mkts., Inc.*,
982 F.3d 468 (7th Cir. 2020) ................................................................... 8, 9, 10, 13

*Campbell v. Whole Foods Mkt. Grp.*,
516 F. Supp. 3d 370 (S.D.N.Y. 2021) ...................................................................... 10

*Chiappetta v. Kellogg Sales Co.*,
No. 21-cv-3545, 2022 WL 602505 (N.D. Ill. Mar. 1, 2022) ..................................... 1

*Clemmons, v. Upfield US Inc.*,
No. 22-cv-355, 2023 WL 2752454 (S.D.N.Y. Mar. 31, 2023) ................................... 9

*Colby v. J.C. Penney Co., Inc.*,
811 F.2d 1119 (7th Cir. 1987) ................................................................................... 7

*Divane v. Krull Elec. Co.*,
200 F.3d 1020 (7th Cir. 1999) ............................................................................... 2, 5

*DM Trans, LLC v. Scott*,
38 F.4th 608 (7th Cir. 2022) ..................................................................................... 7

*Gardner v. Ferrara Candy Co.*,
No. 22-cv-1272, 2023 WL 2599857 (N.D. Ill. Mar. 22, 2023) .................................. 1

*Hamer v. Lake County*,
819 F.2d 1362 (7th Cir. 1987) ................................................................................... 6

*Hamidani v. Bimbo Bakeries LLC*,
No. 22-cv-01026, 2023 WL 167513 (N.D. Ill. Jan. 12, 2023) ................................... 2

*Hartmarx Corp. v. Abboud*,
326 F.3d 862 (7th Cir. 2003) ..................................................................................... 7

*Hill v. Norfolk and Western Ry. Co.*,
    814 F.2d 1192 (7th Cir. 1987) .................................................. 6

*Hot Wax, Inc. v. Turtle Wax, Inc.*,
    191 F.3d 813 (7th Cir. 1999) .................................................. 10

*Johnson v. Waddell & Reed, Inc.*,
    74 F.3d 147 (7th Cir. 1996) .................................................. 2

*Johnston v. Kashi Sales, LLC*,
    No. 21-cv-00441, 2022 WL 4103973 (S.D. Ill. Sept. 8, 2022)............. 10

*Ledezma v. Upfield US Inc.*,
    No. 22-cv-1618, 2022 WL 16553039 (N.D. Ill. Oct. 31, 2022) ............ 2

*Mantikas v. Kellogg Co.*,
    910 F.3d 633 (2d Cir. 2018).................................................. 9

*Mars Steel Corp. v. Continental Bank N.A.*,
    880 F.2d 928 (7th Cir. 1989) .................................................. 5

*Matthews v. Polar Corp.*,
    No. 22-cv-0649, 2023 WL 2599871 (N.D. Ill. Mar. 22, 2023) ............. 2

*McKinnis v. Kellogg USA*,
    No. 07-cv-2611, 2007 WL 4766060 (C.D. Cal. Sept. 19, 2007) ............ 9

*Midlock v. Apple Vacations W., Inc.*,
    406 F.3d 453 (7th Cir. 2005) .................................................. 5, 7

*Miller v. U.S.*,
    868 F.2d 236 (7th Cir. 1989) .................................................. 8

*Peterson v. Artisan & Truckers Cas. Co.*,
    No. 19-cv-102, 2019 WL 2717099 (W.D. Wis. June 28, 2019)............. 7

*Red v. Kraft Foods, Inc.*,
    No. 10-cv-1028, 2012 WL 5504011 (C.D. Cal. Oct. 25, 2012) ............ 9

*Reed v. The Great Lakes Co., Inc.*,
    330 F.3d 931 (7th Cir. 2003) .................................................. 5

*Rudy v. D.F. Stauffer Biscuit Co.*,
    No. 21-cv-03938, 2023 WL 2711612 (N.D. Ill. Mar. 30, 2023) ............ 2

*Sanders v. Hillshire Brands Co.*,
    No. 21-cv-1155, 2022 WL 2643974 (S.D. Ill. July 8, 2022)............... 9

iv

*Sharpe v. A&W Concentrate Co.*,
    481 F. Supp. 3d 94 (E.D.N.Y. 2020) ........................................................ 10

*Stemm v. Tootsie Roll Industries, Inc.*,
    374 F. Supp. 3d 734 (N.D. Ill. 2019) ....................................................... 11

*Thompson v. Duke*,
    940 F.2d 192 (7th Cir. 1991) ..................................................................... 3

*Thompson v. RelationServe Media, Inc.*,
    610 F.3d 628 (11th Cir. 2010) ................................................................... 6

*TMF Tool Co., Inc. v. Muller*,
    913 F.2d 1185 (7th Cir. 1990) ................................................................... 7

*Tucker v. Williams*,
    682 F.3d 654 (7th Cir. 2012) ..................................................................... 6

*US v. Glaser*,
    14 F.3d 1213 (7th Cir. 1994) ..................................................................... 7

*Vollmer v. Publishers Clearing House*,
    248 F.3d 698 (7th Cir. 2001) .............................................................. 3, 4, 5

*Vollmer*, 350 F.3d at 662 ................................................................................ 4

*Wargo v. Hillshire Brands Co.*,
    599 F. Supp. 3d 164 (S.D.N.Y. 2022) ................................................... 10

*Weaver v. Champion Petfoods USA, Inc.*,
    3 F.4th 927 (7th Cir. 2021) ....................................................................... 8

*Werbel v. Pepsico, Inc.*,
    No. 09-cv-4456, 2010 WL 2673860
    (N.D. Cal. July 2, 2010) ............................................................................ 9

*Werch v. City of Berlin*,
    673 F.2d 192 (7th Cir. 1982) ..................................................................... 6

**Statutes**

21 U.S.C. § 321(n) ....................................................................................... 12

28 U.S.C. § 1927 ........................................................................................... 6

410 ILCS 620 .............................................................................................. 11

410 ILCS 620/11(j) ..................................................................................... 11

410 ILCS 620/9 .................................................................................................................. 11

815 ILCS 505/2 .................................................................................................................. 11

**Rules**

Fed. R. Civ. P. 11(b) ........................................................................................................... 6

Fed. R. Civ. P. 11(b)(1) ...................................................................................................... 6

Fed. R. Civ. P. 11(b)(2) ................................................................................................. 6, 14

Fed. R. Civ. P. 11(b)(3) ...................................................................................................... 6

Fed. R. Civ. P. 11(c)(3) ................................................................................................... 1, 2

Fed. R. Civ. P. 11(c)(4) ................................................................................................... 5, 6

**Regulations**

21 C.F.R. § 1.10(d) ...................................................................................................... 12, 13

21 C.F.R. § 1.8 .................................................................................................................. 13

21 C.F.R. § 101.18(b) .................................................................................................. 11, 12

21 C.F.R. § 102.5(b) .......................................................................................................... 12

**Other Authorities**

37 Fed. Reg. 12327,
 Nonstandardized Foods; Proposed Common or Usual Names (June 22, 1972)
 (amending 21 C.F.R. Parts 1, 102) ......................................................................... 11

38 Fed. Reg. 6964,
 Common or Usual Names for Nonstandardized Foods (Mar. 14, 1973)
 (amending 21 C.F.R. Parts 1, 102) .................................................................... 12, 13

39 Fed. Reg. 20885,
 Uniform Method of Declaring the Percentage of an Ingredient in Foods;
 Proposed Percentage Labeling Requirements (June 14, 1974) (21 C.F.R. Parts
 1, 10, 102) ............................................................................................................. 14

39 Fed. Reg. 20888,
 Food Labeling; Label Declaration of Ingredients; Misleading Vignettes;
 Common or Usual Name for Food (June 14, 1974) (21 C.F.R. Parts 1, 102) ................. 12, 13

41 Fed. Reg. 37593,
    Infant and Junior Foods; Establishment of Common or Usual Name (Sept. 7,
    1976) (21 C.F.R. Part 102) ................................................................................... 13

58 Fed. Reg. 2850,
    Food Labeling; Declaration of Ingredients; Final Rule (Jan. 6, 1993) (21
    C.F.R. Parts 101, 102 … 169) .............................................................................. 12

58 Fed. Reg. 2897,
    Food Labeling; Declaration of Ingredients; Common or Usual Name for
    Nonstandardized Foods; Diluted Juice Beverages, Final Rule (Jan. 6, 1993)
    (21 C.F.R. Parts 101 and 102) ............................................................................. 13

Fed. R. Civ. P. 11,
    Advisory Committee's Notes (1993 Amendments) ................................................ 5

## INTRODUCTION

Plaintiff Jeremy Guzman ("Plaintiff") submits this Memorandum of Law in Response to the Court's Order to Show Cause pursuant to Fed. R. Civ. P. 11(c)(3) with respect to whether Plaintiff's Counsel should be required to pay the attorney's fees of Defendant Walmart Inc. ("Defendant"). ECF No. 23, Order of Dismissal, May 15, 2023 ("Order") at 7.

For multiple procedural and substantive reasons, sanctions in the form of payment to Defendant of its attorney fees are neither warranted nor authorized.

## FACTUAL BACKGROUND

Plaintiff filed a Complaint alleging the Defendant's Great Value brand of mayonnaise, "label[ed] and promot[ed] [] as made 'With Olive Oil,'" was misleading because "[it] gives consumers the impression it has a greater absolute and relative amount of olive oil compared to traditional vegetable oil ingredients than it does." Compl. ¶¶ 1-2, 27.

The Court disagreed and granted dismissal because "The label says that the mayo is made 'with olive oil[]'" and not "'mostly olive oil,' or 'more olive oil than other oils,' or anything of that sort." Order at 5.

The Court placed this outcome among "a small sampling of the courts in this district that have rejected the theory put forward by Plaintiff's counsel here" which "alleg[ed] that a label was deceptive because the consumer expected a certain amount of an ingredient in a product" and "direct[ed] Plaintiff's counsel to show cause why he should not have to pay the attorneys' fees incurred by Defendant in this case." Order at 4 citing *Chiappetta v. Kellogg Sales Co.*, No. 21-cv-3545, 2022 WL 602505, at *1 (N.D. Ill. Mar. 1, 2022) (granting dismissal because "strawberry" on label was not a reference to the amount of strawberries), *Gardner v. Ferrara Candy Co.*, No. 22-cv-1272, 2023 WL 2599857, at *1 (N.D. Ill. Mar. 22, 2023) (implausible to expect more milkfat ingredients "when the packaging itself did not promise more"), *Hamidani v. Bimbo*

*Bakeries LLC*, No. 22-cv-01026, 2023 WL 167513, at *1 (N.D. Ill. Jan. 12, 2023) (dismissing claims that "brown bread" product name could mislead consumers with respect to presence of whole grains), *Ledezma v. Upfield US Inc.*, No. 22-cv-1618, 2022 WL 16553039, at *5 (N.D. Ill. Oct. 31, 2022) (dismissing claims because "with olive oil" did "not even obliquely suggest that the product contains a particular amount of olive oil"), *Matthews v. Polar Corp.*, No. 22-cv-0649, 2023 WL 2599871, at *3-4 (N.D. Ill. Mar. 22, 2023) (seltzer's designation as "lemon" not misleading because it was not a promise about the amount of [lemon]."), *Rudy v. D.F. Stauffer Biscuit Co.*, No. 21-cv-03938, 2023 WL 2711612, at *1 (N.D. Ill. Mar. 30, 2023) (same but for cookies labeled as "lemon") and *Sneed v. Ferrero U.S.A.*, Inc., No. 22-cv-1183, 2023 WL 2019049, at *2 (N.D. Ill. Feb. 15, 2023).

In light of these decisions and dismissal of Plaintiff's claims, the "Court direct[ed] Plaintiff's counsel to show cause why he should not have to pay the attorneys' fees incurred by Defendant in this case." Order at 7.

## LEGAL STANDARDS

Rule 11 "was designed to ensure due process and to give the potentially offending party a 'full and fair opportunity to respond and show cause before sanctions are imposed.'" *Divane v. Krull Elec. Co.*, 200 F.3d 1020, 1025 (7th Cir. 1999); Fed. R. Civ. P. 11(c)(3).

The "[current iteration of] Rule 11 [] requires that any *sua sponte* action by [a] district court under the rule be initiated by an order describing the conduct that apparently violates subsection (b) and directing the offender to show cause why it is not in violation." *Johnson v. Waddell & Reed, Inc.*, 74 F.3d 147, 151 (7th Cir. 1996).

A court is "permitted to consider [] past conduct in fashioning Rule 11 sanctions," such as "whether conduct 'was part of a pattern of activity' or 'whether the person has engaged in similar

conduct in other litigation.'" *Vollmer v. Publishers Clearing House*, 248 F.3d 698, 710 (7th Cir. 2001) ("*Volmer I*") citing Fed. R. Civ. P. 11, Advisory Committee's Notes (1993 Amendments).

The "substantive" aspect of Fed. R. Civ. P. 11 requires attorneys to make a "'reasonable inquiry' into both fact and law" such that any paper is filed in (1) "good faith," (2) with a "legal theory [] objectively 'warranted by existing law or a good faith argument' for the modification of existing law," (3) the "factual contentions or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery" and (4) "the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information." *Thompson v. Duke*, 940 F.2d 192, 195 (7th Cir. 1991); Fed. R. Civ. P. 11(b)(1)-(4).

## ARGUMENT

## I.    NO NOTICE PROVIDED AS TO THE SANCTIONABLE CONDUCT

In ordering an attorney "to show cause why conduct specifically described in the order has not violated Rule 11(b)," "Rule 11 and our case law [] mandate that this evidence must be stated with some specificity in the record, and the offending party must be given a full and fair opportunity to respond to the charges." Fed. Rule 11(c)(3); *Vollmer*, 248 F.3d. at 710.

### A.    Reliance on Sources Dehors the Record Improper

Here, "there is evidence suggesting that the district court, in considering information regarding [Plaintiff's Counsel's] reputation or past conduct, utilized sources not disclosed to the attorneys or presented in the record," noting that "[they] ha[ve] developed a fair bit of notoriety for filing cases about consumer labeling." *Vollmer*, 248 F.3d. at 710; Order at 6.

As "notoriety" is defined as "the state of being famous for something bad" and "shame; infamy; disrepute; known widely and unfavorably," the Court should provide the sources for such

3

a statement to allow an informed response, because "Use of such information to fashion a Rule 11 sanction would be inappropriate."[1] *Vollmer*, 248 F.3d. at 710.

The Court's "only other given explanation for its" Order are its statements that "Plaintiff's counsel has peddled this theory time and again, in case after case, without much success in this district," "[having] gone round and round the carousel a number of times with Plaintiff's counsel in cases about deceptive product labeling." Order at 1, 3 *compare with Vollmer v. Selden*, 350 F.3d 656, 663 (7th Cir. 2003) ("*Volmer II*") (rejecting sanctions where district court's explanation included how "[t]hese attorneys have seemingly made intervening in nationwide class actions a routine practice.").

## B.   None of Cited Cases Were Deemed Frivolous

Like the court in *Vollmer II*, this Court "based its finding on [seven] cases, which it cited in its order," declaring "It is time for the carousel to come to a halt." *Vollmer*, 350 F.3d at 662; Order at 3.

While it is true that "Many of the complaints have suffered the judicial equivalent of a crash landing, or perhaps an explosion on the launch pad [and] haven't survived for long," "this finding teaches us little about the propriety of [Plaintiff's Counsel's]" adherence to Rule 11. Order at 6; *Vollmer*, 350 F.3d at 662.

Significantly, "with the [possible] exception of the case at bar, none of [Plaintiff's Counsel's] [cases] have ever been found to be frivolous or motivated by an improper purpose." *Vollmer*, 350 F.3d at 662. The Court's "show cause order" "appears to rest on nothing more solid than the [Court]'s speculation that [Plaintiff's Counsel]" has breached Rule 11, especially where "none of [their] previous cases ha[ve] been adjudged frivolous." *Reed v. The Great Lakes Co.,*

---

[1] Notoriety, Cambridge Dictionary and The Free Dictionary.

4

*Inc.*, 330 F.3d 931, 937 (7th Cir. 2003) (vacating sanctions where "speculation [wa]s too thin to sustain [court's] order.").

## II.     RULE 11 DOES NOT AUTHORIZE *SUA SPONTE* IMPOSITION OF ATTORNEY'S FEES

The Court's "direct[ive] [that] Plaintiff's counsel [] show cause why he should not have to pay the attorneys' fees incurred by Defendant in this case" is legally and factually deficient. Order at 7.

First, "while a judge is permitted by Rule 11 to impose sanctions on his own initiative, when he does that he cannot include an award of attorneys' fees," because Fed. R. Civ. P. 11(c)(4) requires that such fees can only be "imposed on motion." *Midlock v. Apple Vacations W., Inc.*, 406 F.3d 453, 455 (7th Cir. 2005); Fed. R. Civ. P. 11(c)(3); *Divane*, 200 F.3d at 1030-31 citing Fed. R. Civ. P. 11, Advisory Committee's Notes (1993 Amendments) ("Rule 11 [] provides that, if a monetary sanction is imposed, it should ordinarily be paid into the court as a penalty.").

Second, the Court's conclusion that "Plaintiff's Counsel has become a wrecking ball when it comes to imposing attorneys' fees on other people" is without foundation, "utiliz[ing] sources not disclosed to the attorneys or presented in the record." Order at 7; *Vollmer*, 248 F.3d at 710.

Third, even accepting that "Plaintiff's counsel is imposing plenty of costs," it does not follow that "someone has to pay them," because Rule 11 "is not a fee-shifting statute in the sense that the loser pays." *Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928, 932 (7th Cir. 1989) (authorizing sanctions "if counsel files with improper motives or inadequate investigation."). As indicated below, neither criteria can be established.

Fourth, though the Court "direct[ed] Plaintiff's counsel to show cause why he should not have to pay the attorneys' fees incurred by Defendant in this case," "Congress has not 'extended any roving authority to the Judiciary to allow counsel fees as costs or otherwise whenever the

5

courts might deem them warranted." Order at 7; *Hill v. Norfolk and Western Ry. Co.*, 814 F.2d 1192, 1207 (7th Cir. 1987) quoting *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 260 (1975).

That the "Court is starting to wonder who should pay for the cleanup" is irrelevant, because neither Rule 11(c)(4), 28 U.S.C. § 1927, nor a court's "inherent power" is "a grant of authority to do good, rectify shortcomings of the common law ... or undermine the American rule on the award of attorneys' fees to the prevailing party." Order at 7; *Tucker v. Williams*, 682 F.3d 654, 661-62 (7th Cir. 2012) (finding imposition of sanctions "in the interest of 'fairness'" "precisely the sort of sanction that is outside the court's inherent power").

## III. PLAINTIFF'S CLAIMS WERE SUPPORTED BY EXISTING LAW UNDER *BELL*

Since "[A] Rule 11(b)(2) or (b)(3) violation – bringing a legally or factually frivolous claim – is often probative of a Rule 11(b)(1) improper purpose violation," this is where the Rule 11(b) analysis usually begins. *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 664-65 (11th Cir. 2010).

### A. Rule 11 Requires Review of Legal Precedent

In assessing whether "a farfetched legal theory [] makes a [] case frivolous … an 'award of fees is only permitted when litigation proceeds in the face of controlling and unambiguous precedent.'" *Hamer v. Lake County*, 819 F.2d 1362, 1368 (7th Cir. 1987) citing *Werch v. City of Berlin*, 673 F.2d 192, 196 (7th Cir. 1982) (finding no basis in law where "it [w]as [] well-established in this Circuit that the Anti-Injunction Act bars a section 1983 civil rights suit for injunctive relief against state tax assessments if state law provides an adequate remedy.").

Since "Opinions 'bind' only within a vertical hierarchy," whether Plaintiff's expectation "[of] a greater absolute and/or relative amount of olive oil" based on the description as made "'With Olive Oil,' with green packaging evocative of the color of olives" was "warranted by

existing law" requires review of applicable precedent. *US v. Glaser*, 14 F.3d 1213, 1216 (7th Cir. 1994) citing *Colby v. J.C. Penney Co., Inc.*, 811 F.2d 1119, 1123 (7th Cir. 1987); Compl. ¶¶ 26, 83; *see* Black's Law Dictionary, 1366 (10th ed. 2014) (defining precedent as a decided case that furnishes a basis for determining later cases involving similar facts or issues).

In lieu of applying precedent, the Court "argue[d] as though [*Chiapetta*, *Rudy*, *Gardner*, *Matthews*, *Sneed*, *Ledezma*, *Hamidani* and others] are binding authority on [any] court, which of course they are not," since, as "[the Seventh Circuit has] 'noted repeatedly, [] district court decision[s] do[] not have stare decisis effect [] [and] [are] not [] precedent[s].'" *DM Trans, LLC v. Scott*, 38 F.4th 608, 620 (7th Cir. 2022) citing *Midlock*, 406 F.3d at 457; *see also Peterson v. Artisan & Truckers Cas. Co.*, No. 19-cv-102, 2019 WL 2717099, at *3 (W.D. Wis. June 28, 2019) (denying sanctions that "primarily rest[ed] on plaintiff's pursuing the same rejected theory based on the same allegations as in [another case decided by the same judge") citing *Midlock*, 406 F.3d at 457.

Though "it is an entirely proper practice for district judges to give deference to persuasive opinions by their colleagues on the same court[,] … [] it does not convert [those] district court decisions into binding precedent" or establish "stare decisis." *TMF Tool Co., Inc. v. Muller*, 913 F.2d 1185, 1191 (7th Cir. 1990) citing *Colby*, 811 F.2d at 1124. This is "because the responsibility for maintaining the law's uniformity is a responsibility of appellate rather than trial judges [including this Court]." *Colby*, 811 F.2d at 1124.

The Court "would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Hartmarx Corp. v. Abboud*, 326 F.3d 862, 867 (7th Cir. 2003).

B.    Applicable Standard for "Reasonable Consumer" Analysis

Though a "bedrock principle of stare decisis" is that "lower courts are bound by the precedential authority of cases rendered by higher courts," the Court gave *Bell* short shrift. *Miller v. U.S.*, 868 F.2d 236, 241 (7th Cir. 1989); *Bell v. Publix Super Mkts., Inc.*, 982 F.3d 468 (7th Cir. 2020).

While *Weaver* involved dismissal of consumer protection claims related to food labeling, it did not disturb *Bell* because "[t]he result [wa]s different [] because of the difference between a motion to dismiss on the pleadings and a motion for summary judgment." *Weaver v. Champion Petfoods USA, Inc.*, 3 F.4th 927, 938 (7th Cir. 2021) quoting *Bell*, 982 F.3d at 482-83 distinguishing *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 972-73 (7th Cir. 2020) (decision on summary judgment).

While *Weaver* observed that "[s]everal district courts have held that references to ingredients used do not imply that ingredient is used exclusively," nowhere did it hold that "[T]hese questions may [] be answered as a matter of law simply because lawyers [and judges] can construe an ambiguous claim in a way that would not be deceptive." *Weaver*, 3 F.4th at 937; *Bell*, 982 F.3d at 480.

Instead of applying the required "practical and fact-intensive approach to consumer behavior under deceptive-advertising laws [such as the ICFA]," the Court invoked *Bell* for its conclusion that an "unreasonable or fanciful interpretation[] of [a] label" warrants dismissal. *Bell*, 982 F.3d at 474, 478; Order at 5 quoting *Bell*, 982 F.3d at 477.

The Court did not compare why expecting more olive oil in a mayonnaise promoted as "With Olive Oil" was similar to believing "the colorful rings and balls of cereal shown on 'Froot Loops' and 'Cap'n Crunch' boxes promised real fruit within" or how "Made with Real Vegetables" meant "crackers were 'composed of primarily fresh vegetables.'" *Bell*, 982 F.3d at

8

478 citing *Werbel v. Pepsico, Inc.*, No. 09-cv-4456, 2010 WL 2673860, at *3 (N.D. Cal. July 2,

2010) ("Cap'n Crunch"), *McKinnis v. Kellogg USA*, No. 07-cv-2611, 2007 WL 4766060, at *4

(C.D. Cal. Sept. 19, 2007) ("Froot Loops") and *Red v. Kraft Foods, Inc.*, No. 10-cv-1028, 2012

WL 5504011, at *3 (C.D. Cal. Oct. 25, 2012).

    C.    <u>Reference to Ingredients Sufficiently Plausible to Suggest Amounts of Them</u>

    Had it done so, it would have realized that "[The Seventh Circuit] has explicitly adopted

the reasoning [of the Second Circuit] in *Mantikas*," such that "the mere fact that the [mayonnaise]

did contain some [olive oil] was insufficient to defeat the lawsuit, because the [] bold-faced '[]

With [Olive Oil]' claim arguably "communicate[d] to the reasonable consumer that the [vegetable

oils] [] [were] predominantly, if not entirely, [olive oil]." *Sanders v. Hillshire Brands Co*., No. 21-

cv-1155, 2022 WL 2643974, at *3 (S.D. Ill. July 8, 2022) (denying dismissal where front label

claim of "made with whole grain" was truthful) citing *Bell*, 982 F.3d at 477 and *Mantikas v.

Kellogg Co.*, 910 F.3d 633, 637 (2d Cir. 2018) (reversing dismissal in context of crackers labeled

as "Whole Grain" and "Made With Whole Grain" because to accept that "it is not misleading to

state that a product is made with a specified ingredient if that ingredient is in fact present – would

validate highly deceptive advertising and labeling.").

    Moreover, dismissal of the "fanciful" claims cited in *Bell* was because they alleged "a

subset of claims involving 'an ingredient that obviously was not the products' primary

ingredient,'" like crackers advertised as "made with real vegetables," because "a consumer would

'be familiar with the fact of life that a cracker is not composed of primarily fresh vegetables.'"

*Clemmons v. Upfield US Inc.*, No. 22-cv-355, 2023 WL 2752454, at *5 (S.D.N.Y. Mar. 31, 2023)

(finding that "Made With Olive Oil" could cause consumers to believe "that the major plant-based

ingredient was olive oil.") citing *Mantikas*, 910 F.3d at 638 quoting *Red*, 2012 WL 5504011, at

*2; *Bell*, 982 F.3d at 478 citing *Red*, 2012 WL 5504011, at *3.

Numerous other courts, in cases brought by Plaintiff's Counsel, applied this principle to conclude that it was plausibly misleading to "falsely impl[y]" that a food contains more of a valued ingredient than it did, even when there was no dispute about the presence of those ingredients. *Bardsley v. Nonni's Foods LLC*, No. 20-cv-2979, 2022 WL 814034, at *1 (S.D.N.Y. Mar. 16, 2022) ("made with…lemon zest") quoting *Campbell v. Whole Foods Mkt. Grp.*, 516 F. Supp. 3d 370, 386 (S.D.N.Y. 2021) (denying dismissal of claims crackers had de minimis amount of whole grains and honey), *Sharpe v. A&W Concentrate Co.*, 481 F. Supp. 3d 94, 104 (E.D.N.Y. 2020) (declining to find "Made With Aged Vanilla" not misleading even though "purported misrepresentation pertained to a non-predominant ingredient" in root beer); *Wargo v. Hillshire Brands Co.*, 599 F. Supp. 3d 164, 172 (S.D.N.Y. 2022) (denying dismissal where "made with whole grain" was true because it contained that ingredient) citing *Mantikas*, 910 F.3d at 638-639; *Johnston v. Kashi Sales, LLC*, No. 21-cv-00441, 2022 WL 4103973, at *7 (S.D. Ill. Sept. 8, 2022) (finding allegations about strawberry content of cereal bars far removed from the "California breakfast cereal" cases cited in *Bell*).

While it was not disputed that label "says nothing about the amount of olive oil," "[a] statement [may be] misleading when, although literally true, it implies something that is false." *Bell*, 982 F.3d at 479.

In light of the "literal truth" of "With Mayo" and how the label "does not say 'mostly olive oil,' or 'more olive oil than other oils,' or anything of that sort," Plaintiff showed how this claim "implicitly convey[ed] a false impression, [was] misleading in context, or likely to deceive consumers." *Bell*, 982 F.3d at 479 quoting *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 819 (7th Cir. 1999).

## IV.    ALLEGATIONS "WARRANTED BY LAW" BASED ON LABELING REQUIREMENTS

The Illinois Food, Drug and Cosmetic Act ("IFDCA"), 410 ILCS 620 *et seq.*, adopted all "Definitions and standards of identity, quality and fill … adopted under authority of the [FFDCA]" and all "federal regulations [] adopted pursuant to [the FFDCA]." 410 ILCS 620/9 and 410 ILCS 620/11(j).

Though a party "cannot use an alleged F[F]DCA violation as the predicate for an ICFA violation," this is not equivalent to according such violations no weight, especially where the relevant law and regulations address the "misrepresentation or [] omission of [] material facts." *Stemm v. Tootsie Roll Industries, Inc.*, 374 F. Supp. 3d 734, 742 (N.D. Ill. 2019); 815 ILCS 505/2.

Though the Court concluded "A reasonable consumer could not interpret that representation ['Mayo with Olive Oil'] to mean that the mayo contains a particular amount of olive oil," Plaintiff's argument to the contrary is not only not frivolous, but consistent with these laws, specifically, 21 C.F.R. § 101.18(b) and 21 C.F.R. § 102.5(b).

### A.    Olive Oil is the Product's Characterizing Ingredient

Federal and identical state law requires that "where the proportion of an expensive ingredient has a material bearing upon price or consumer acceptance, the label of a food shall bear a quantitative statement of the ingredient." 37 Fed. Reg. 12327, 12327, Nonstandardized Foods; Proposed Common or Usual Names (June 22, 1972) (amending 21 C.F.R. Parts 1, 102) (citing approval from then-President and White House Conference of Food, Nutrition, and Health).

Olive oil, when "added [to] mixtures of edible fat or oil," is considered a "characterizing ingredient" because these mixtures generally include the types of "traditional vegetable oils" described in the Complaint, and its inclusion "has a material bearing on price and consumer acceptance of such mixtures." 37 Fed. Reg. 12327 at 12327; 39 Fed. Reg. 20888, 20889, Food

11

Labeling; Label Declaration of Ingredients; Misleading Vignettes; Common or Usual Name for Food (June 14, 1974) (21 C.F.R. Parts 1, 102).

Olive oil is a "characterizing ingredient" in Defendant's mayonnaise because its "proportion [] has a material bearing on price or consumer acceptance," because (1) "[its] popularity has increased such that its sales exceed all other vegetable oils combined" and (2) unlike "traditional vegetable oils [that] are recognized as containing harmful fats with negative health effects," it contains "high levels of heart-healthy fats" that "provide [] health benefits." Compl. ¶¶ 11, 19-21; 38 Fed. Reg. 6964, at 6965, Common or Usual Names for Nonstandardized Foods (Mar. 14, 1973) (amending 21 C.F.R. Parts 1, 102); Complaint at ¶ 66.

B.     Label was Required to Declare Relative Amount of Olive Oil

Olive oil was "prominently declared [] through identity [] information, [and] has a market appeal," which was sufficient to require its percentage be declared in accordance with 21 C.F.R. § 102.5(b). 58 Fed. Reg. 2850, 2865, Food Labeling; Declaration of Ingredients; Final Rule (Jan. 6, 1993) (21 C.F.R. Parts 101, 102 … 169).

Even though the "the label [did not] guarantee anything about the amount of olive oil in the mayo, in absolute or relative terms," its "name [Mayonnaise With Olive Oil] [] include[d] [] the name of [olive oil] but not all such ingredients," like soybean oil, and failing to "include the percentage(s) of [its] [olive oil]" is misleading to consumers and contrary to law. 21 C.F.R. § 101.18(b) and 21 C.F.R. § 102.5(b).

The Court's position, that "the amount of [the] characterizing ingredient [of olive oil] is not a 'material fact' within the meaning of [21 U.S.C. § 321(n)]" such that it was "unreasonable

12

or fanciful" to expect more olive oil, contradicts federal and state labeling requirements. 38 Fed. Reg. 6964, 6964;[2] Order at 5 quoting *Bell*, 982 F.3d at 477.

In all instances where the FDA has considered similar scenarios, whether in "seafood cocktails," mixtures of edible oils, infant foods and multiple-juice beverages, "there is a potential for deception [where] the ingredient(s) listed in the name of [those] foods may appear to be present in amounts greater than is actually the case," even when those ingredients were "list[ed] []in order of predominance in the ingredient statement." 37 Fed. Reg. 12327 at 12327; 41 Fed. Reg. 37593, 37594, Infant and Junior Foods; Establishment of Common or Usual Name (Sept. 7, 1976) (21 C.F.R. Part 102); 58 Fed. Reg. 2897, 2920, Food Labeling; Declaration of Ingredients; Common or Usual Name for Nonstandardized Foods; Diluted Juice Beverages, Final Rule (Jan. 6, 1993) (21 C.F.R. Parts 101 and 102) ("for multiple-juice beverages that name one or more but not all of the juices present other than in the ingredient list, there is great potential for the label to misrepresent the contribution of the named juice to the product.")

Preceding *Bell* and *Mantikas*, the FDA distinguished when an ingredient "would not be regarded as sufficiently important to require percentage labeling," such as flour in bread, and traditional vegetable oils in mayonnaise, because these are generally understood as their primary components. 38 Fed. Reg. 6964, at 6965.

Plaintiff alleged "With Olive Oil" was "misleading in context" as to the "absolute and/or relative amount of olive oil" based on the definition of mayonnaise as consisting mainly of "traditional vegetable oils," "such as soybean oil." *Bell*, 982 F.3d at 479 quoting *B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 168 F.3d 967, 971 (7th Cir. 1999); Compl. ¶¶ 2, 66.

---

[2] 39 Fed. Reg. 20888, 20889, Food Labeling; Label Declaration of Ingredients; Misleading Vignettes; Common or Usual Name for Food (June 14, 1974) (21 C.F.R. Parts 1, 102) (transferring section on "Percentage of Characterizing Ingredients" label requirement from 21 C.F.R. § 1.10(d) to 21 C.F.R. § 1.8).

Though the Court found that "with olive oil" applied to a blend of traditional vegetable oils meant nothing more than telling consumers it had olive oil, "declaring the percentage of characterizing ingredients [] in a food would be helpful to consumers by preventing confusion," which is why it was required. 39 Fed. Reg. 20885, 20885, Uniform Method of Declaring the Percentage of an Ingredient in Foods; Proposed Percentage Labeling Requirements (June 14, 1974) (21 C.F.R. Parts 1, 10, 102); Complaint ¶¶ 26-27;

## V. ANY DIFFERENCE BETWEEN "WITH" AND "MADE WITH" SUPPORTS EXTENSION OF EXISTING LAW

To the extent the Court concludes that the *Bell*, *Mantikas* and their progeny do not apply because those cases involved foods claiming to be "made with" valuable ingredients while Defendant's mayonnaise merely is described as "with olive oil," there is a "nonfrivolous argument for extending" the law. Fed. R. Civ. P. 11(b)(2).

According to the Cambridge Dictionary's definition, "We use *made with* most often to talk about the ingredients of food and drink: This dish is made with beef, red peppers and herbs" [3] (emphasis in original). The Britannica Dictionary defines "with" as "using" and offers the example that "The sauce is made *with* milk and cheese" (emphasis in original).[4]

In the context of food labeling, there appears to be little difference if the word "made" were excised from "made with," because it is apparent that any food promoting an ingredient is made with, or contains, that ingredient.

## CONCLUSION

At some point in its series of orders, the Court should have asked itself, why, over hundreds of cases filed by Plaintiff's Counsel, over numerous years, against the world's biggest food

---

[3] Made from, made of, made out of, made with, Cambridge Dictionary.
[4] With, The Britannica Dictionary.

companies, represented by the biggest law firms, no sanctions have ever been imposed against them. Only this Court seemingly discovered something that hundreds of other courts failed to recognize, and it has asserted on their behalf the common "institutional interest in protecting themselves from frivolous cases." Order at 6.

The reason for this is because Plaintiff's Counsel's arguments are always supported by law or a nonfrivolous argument "for extending, modifying, or reversing existing law or for establishing new law."

Finally, even accepting that *Bell* does not apply, "the existence of [numerous] district court decision[s] [] did not make [this Complaint] objectively unreasonable as a matter of law," no matter how many idioms the Court comes up with. *TMF Tool Co., Inc. v. Muller*, 913 F.2d at 1192.

Dated:    May 27, 2023

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
spencer@spencersheehan.com
60 Cuttermill Rd Ste 412
Great Neck NY 11021
Tel: (516) 268-7080

15

**Certificate of Service**

I certify that on May 27, 2023, I served and/or transmitted the foregoing by the method below to the persons or entities indicated, at their last known address of record (blank where not applicable).

| | CM/ECF | First-Class Mail | Email | Fax |
|---|---|---|---|---|
| Defendant's Counsel | ☒ | ☐ | ☐ | ☐ |
| Plaintiff's Counsel | ☐ | ☐ | ☐ | ☐ |
| Courtesy Copy to Court | ☒ | ☐ | ☐ | ☐ |

_/s/ Spencer Sheehan_